07-1521-cr. 08-2779-cr
United States v. Drayer

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of February, two thousand ten.**

PRESENT:
> ROGER J. MINER,
> JOSÉ A. CABRANES,
> > *Circuit Judges*,
> SIDNEY H. STEIN,
> > *District Judge*.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

> *Appellee*,

> -v.-                                               Nos. 07-1521-cr, 08-2779-cr

BARRY DRAYER and STEPHEN BARKER,

> *Defendants-Appellants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**COUNSEL FOR DEFENDANTS-APPELLANTS:**      KIM P. BONSTROM, Bonstrom & Murphy, Shelter Island, NY, *for Barry Drayer.*

JEREMY GUTMAN, New York, NY, *for Stephen Barker.*

---

[*] The Honorable Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

**COUNSEL FOR APPELLEE:**   CAROLYN POKORNY, Assistant United States Attorney (Benton J. Campbell, Acting United States Attorney for the Eastern District of New York, *on the brief*, Susan Corkery, Scott Klugman, Assistant United States Attorneys, *of counsel*), Office of the United States Attorney for the Eastern District of New York, New York, NY.

Appeal from judgments of the United States District Court for the Eastern District of New York (Arthur D. Spatt, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's judgments of conviction for defendants-appellants Barry Drayer and Stephen Barker dated January 12, 2007 and May 27, 2008 respectively, are **AFFIRMED** except with respect to the sentence imposed and restitution ordered for Drayer. The sentence and restitution ordered with respect to Drayer are **VACATED** and the matter is **REMANDED** for proceedings not inconsistent with this Order.

Defendants-appellants Barry Drayer and Stephen Barker appeal from judgments of conviction entered on January 12, 2007 and May 27, 2008 respectively, following a jury trial in the United States District Court for the Eastern District of New York convicting them of conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 371 and conspiracy to launder funds in violation of 18 U.S.C. § 1956(h). Drayer was also convicted of five counts of bank fraud in violation of 18 U.S.C. § 1344. The District Court sentenced Drayer principally to two concurrent prison terms of 138 months and ordered him to pay $7,973,524.87 in restitution. Barker was sentenced to two concurrent prison terms of 48 months and ordered to pay restitution in the amount of $274,825.57.

Both Drayer and Barker challenge the sufficiency of the evidence supporting their respective money laundering convictions, and Barker challenges the sufficiency of the evidence supporting his fraud conviction. Drayer alone argues that his sentence should be vacated as unreasonable because of errors he contends the District Court made in calculating his offense level and corresponding

2

Guidelines range.  Drayer also contends that the District Court erred in its calculation of the restitution he owes.  We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

**I. Sufficiency of the Evidence**

**A. Sufficiency of the Evidence for Barker's Conviction**

Barker argues that there was insufficient evidence to convict him of money laundering and fraud.  These claims were properly preserved below; we therefore review them *de novo*.  *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir. 1997).  A defendant challenging the sufficiency of the evidence to support his conviction "bears a heavy burden" and, in considering such a challenge "we must credit every inference that could have been drawn in the government's favor, and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006) (internal citation omitted).  "We defer to the jury's determination of the weight of the evidence and the credibility of witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence," and  "the conviction must be upheld if any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Id.* at 94-95 (internal quotations and citations omitted).  *See generally Jackson v. Virginia*, 443 U.S. 307 (1970).  "'This standard of deference is especially important when reviewing a conviction of conspiracy.'" *Leslie*, 103 F.3d at 1100 (quoting *United States v. Taylor*, 92 F.3d 1313, 1333 (2d Cir. 1996)).

Barker argues, specifically, that there was insufficient evidence to prove his intent or knowledge of the details of the alleged conspiracy and fraud.  However, "[t]o be convicted as a member of a conspiracy, a defendant need not know every objective of the conspiracy," *United States v. Gleason*, 616 F.2d 2, 16 (2d Cir. 1979), and the government was not required to prove Barker's knowledge of every aspect of the frauds in order to obtain a conviction. *Id.*   Moreover, in

3

evaluating whether or not a defendant engaged in a conspiracy, a jury is permitted to rely on the totality of the circumstantial evidence. *United States v. Santos*, 449 F.3d 93, 103 (2d Cir. 2006). In light of that body of evidence, Barker's claims are insufficient to overcome our deference to the jury's determinations. Thus, substantially for the reasons stated by the District Court in denying Barker's motion made pursuant to Rule 29 of the Federal Rules of Criminal Procedure, we affirm Barker's convictions.

B.      **Sufficiency of the Evidence for Drayer's Conviction**

Drayer's sufficiency challenge centers on *United States v. Santos*, --U.S.--, 128 S. Ct. 2020 (2008) in which a splintered Supreme Court reversed a money laundering conviction, with a plurality finding that the term "proceeds" of specified unlawful activity ("SUA") as used in the money laundering statute meant "profits" rather than gross receipts. *Id.* at 2029 (plurality). Relying on that plurality opinion, Drayer argues that his conviction must be reversed because the government failed to establish that he used "profits" rather than gross receipts from a SUA in furtherance of his money laundering scheme.

Because *Santos* was decided after Drayer's conviction became final, we review the unpreserved claim under a modified plain-error analysis with the government bearing the burden of establishing a lack of prejudice to the defendant from any error below. *United States v. Viola*, 35 F.3d 37, 42 (2d Cir. 1994). An error is plain if it represents a "clear or obvious deviation from current law that affected the outcome of the district court proceedings." *United States v. Crowley*, 318 F.3d 401, 415 (2d Cir. 2003) (internal quotations and citations omitted). *Cf. Viola*, 35 F.3d at 42 ("'[C]urrent law' . . . means the law current at the time of the appeal, not at trial." (citations omitted)).

Here no plain error occurred. Only four justices in *Santos* signed on to a definition of "proceeds" as "profits" in any context other than the one presented by that case. *See Santos*, 128 S. Ct. at 2033 n.7 (Stevens, J., concurring in the judgment) ("In other applications of the statute not

4

involving such a perverse result, I would presume that the [dissent] reflects the intent of the enacting Congress."). *Cf. Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotations omitted)). Our Court has not yet had an opportunity to determine the "narrowest grounds" constituting the holding of *Santos*, but we need not do so now because we conclude, in light of the very different application of the money laundering statute involved in this case, that under no reading of *Santos* could Drayer's conviction have constituted a "clear or obvious deviation" from current law.

To the extent Drayer raises any additional challenges to the sufficiency of the evidence supporting his conviction, we review them pursuant to traditional plain error analysis, and, having considered them, reject those challenges as meritless.

## II. Drayer's Sentencing

Drayer argues the District Court erred in imposing his sentence because it computed the loss caused by his crimes improperly and erroneously added a four-point multiple-victim enhancement when calculating his Guidelines range.

Following *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for "'reasonableness,' which is defined not only by the length of the sentence, but also by the process the district court used to determine the sentence." *United States v. Williams*, 524 F.3d 209, 214 (2d Cir. 2008). "Procedural error" occurs when, among other things, the district court "is mistaken in the Guidelines calculation" or "makes clearly erroneous factual findings." *United States v. Johnson*, 567 F.3d 40, 51. (2d Cir. 2009) (citations omitted). Where we find "significant procedural error," the "proper course [is] to remand to the district court so that it can either explain what it was trying to

5

do, or correct its mistake and exercise its discretion anew." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc); *see also Johnson*, 567 F.3d at 52.

### A. The Loss Calculation

As a preliminary matter, the parties disagree as to whether Drayer preserved an objection to the loss computation below. The District Court, however, expressly observed in adopting a loss amount that "[t]he defendant does not concede the amount of this . . . [l]oss," (A. 111)[1], and therefore we deem the objection preserved and review the District Court's factual findings with respect to the loss calculation for clear error and its application of the Guidelines *de novo*. *United States v. Rubsentein*, 403 F.3d 93, 99 (2d Cir. 2005).

Drayer identifies two different errors in the District Court's loss computation. First, he contends the District Court erred in adopting a $12.5 million loss figure because that figure derived from a misreading of trial testimony. Second, Drayer contends the District Court failed to calculate any "credits against loss" Drayer may have been entitled to by virtue of the collateral pledged in support of the fraudulent loans he obtained. *See* U.S.S.G. § 2B1.1 cmt. n.2(E)(ii)[2] ("Loss shall be reduced . . . [i]n a case involving collateral pledged or otherwise provided by the defendant [in] the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.").

At sentencing, the District Court declined, over Drayer's objection, to hold a *Fatico* hearing, *see United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), and made no factual findings of its own, instead adopting the $12.5 million figure based on the government's representation that the trial testimony

---

[1]All record citations refer to the appendix of defendant-appellant Barry Drayer.

[2]The parties agree that the Sentencing Guidelines in effect as of November 1, 2001 apply to Drayer's sentencing, and accordingly, all references are to the 2001 Guidelines Manual.

6

offered by representatives of four victim-banks established a loss in that amount. (A. 94-45, 160.) However, at the subsequent and more thorough restitution hearing, the District Court determined that the very same trial testimony of those four victim-banks did not, in fact, establish a $12.5 million loss but instead established, at most, a loss of $5.5 million. (A. 264-68.) In the District Court's own view, thus, the $12.5 million loss figure that it had adopted at sentencing based on the government's representations was not and had never been a correct computation of the loss caused by Drayer's crimes. Use of that figure at sentencing was clearly erroneous. *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008) ("A finding is clearly erroneous when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (quotations and citations omitted)). Had the District Court adopted the $5.5 million figure that it later determined was actually supported by the trial testimony, the result would have been a two-level reduction in Drayer's offense level and a corresponding reduction to his Guidelines range. *See* U.S.S.G. 2B1.1(b)(1).

The government, while conceding that the trial testimony from the four victim-banks did not establish a loss of $12.5 million, contends that the error was harmless because the government established in excess of $20 million in actual losses at the restitution hearing, a figure which, if adopted for purposes of sentencing, would require an *increase* by two levels of Drayer's offense level. We cannot adopt that reasoning. "Even though a non-Guidelines sentence was imposed . . . any error in making the initial calculation of the applicable guideline range will normally undermine the validity of the resulting sentence." *United States v. Confredo*, 528 F.3d 143, 150 (2d Cir. 2008). That is particularly true where the error in making the initial calculation of the applicable Guidelines range is itself based on a clearly erroneous factual finding. *Johnson*, 567 F.3d at 51. Under such circumstances, we believe that remand is necessary to allow the District Court to clarify its factual findings and loss computation and to then recalculate the applicable Guidelines range. Whether, as

7

the government urges, adoption of the loss findings made at the restitution hearing is appropriate for purposes of sentencing is a determination we believe the District Court should make in the first instance.

With respect to credits against loss, the District Court also made no factual findings, nor did it address the argument the government advances before this Court that the credits-against-loss provision does not apply because Drayer engaged in a "Ponzi [or] Other Fraudulent Investment Scheme[ ]." *See* U.S.S.G. § 2B1.1 cmt. n.2(F)(iv). While we review challenges to application of the Guidelines *de novo*, where, as here, application of the Guidelines is heavily dependent on factual findings, the absence of a developed record affords no basis for meaningful review. Accordingly, having already determined that remand is necessary, we think it most prudent to save for the District Court consideration of what credits against loss, if any, Drayer is entitled to.

### B.      Multiple-Victim Enhancement

Second, Drayer contends the District Court erroneously added a four-point multiple-victim enhancement to his Guidelines range because it found that Drayer's crime impacted "50 or more victims." *See* U.S.S.G. § 2B1.1(b)(2)(B). The enhancement was in error, Drayer urges, because the District Court was only entitled to count those victims included in the loss computation--in this case, only the four banks that provided the basis for the $12.5 million figure. Because Drayer did not raise the objection below, we review the claim for plain error. *United States v. Bayless*, 201 F.3d 116, 127-28 (2d Cir. 2000).

This Court has established that "[t]he Guidelines' adjustment for the number of victims refers to the victims who sustained losses as determined by the loss calculation Guideline." *United States v. Abiodun,*, 536 F.3d 162, 169 (2d Cir. 2008) (citing U.S.S.G. § 2B1.1 cmt n.1). Because the District Court's loss computation included just four banks, only four victims could be considered when determining whether a multiple-victim enhancement was appropriate. Inclusion of additional

8

victims here, thus, was a "clear or obvious deviation from current law." *Crowley*, 318 F.3d at 414-15. Moreover, the error affected the outcome of the District Court proceedings because it resulted in an unwarranted four-level increase in Drayer's offense level and a corresponding increase in his Guidelines range.

While conceding that the District Court erroneously found that Drayer's crime impacted 50 or more victims, the government nonetheless contends the error was harmless. First, the government argues that it established harm to 41 victims at the restitution hearing, which would warrant a two-level enhancement. *See* U.S.S.G. § 2B1.(b)(2)(A). Second, the government contends that when coupled with the two-level increase in Drayer's loss enhancement that would result had the District Court adopted its restitution findings in that respect as well, the net effect would be the same offense level and Guidelines range as calculated at Drayer's sentencing.

We decline to engage in that largely speculative act of Guidelines calculation. The procedural errors identified in the determination of Drayer's sentence led to an unwarranted six-level increase in his offense level and a corresponding shift in his Guidelines range from 97-121 months to 188-235 months. On this record, we are simply unable to conclude that such a dramatic increase can either be justified by findings not explicitly made by the District Court in imposing Drayer's sentence or be deemed "harmless."

We note that where, as here, remand is "necessitated by specific error(s), resentencing is limited, not *de novo*," *United States v. Thorn*, 446 F.3d 378, 385 (2d Cir. 2006), and to the extent Drayer raises other objections to the sentence as imposed, we have considered and now reject those challenges. Remand is necessary, however, for clarified factual findings with respect to the loss computation and applicability of a multiple-victim enhancement and a recalculation of the applicable Guidelines range so as to satisfy the procedural requirements for sentencing.

**III. Drayer's Restitution**

Finally, Drayer raises five challenges to the restitution order imposed by the District Court, only one of which warrants discussion: Drayer contends the District Court failed to properly reduce the restitution imposed by amounts received by victim-banks from civil proceedings as required by statute. *See* 18 U.S.C. § 3664(j)(2). Specifically, Drayer argues that while 21 of the victim-banks received funds from a civil settlement with the Bank of New York ("BONY Settlement"), the District Court reduced its restitution order only by the amount that one of those 21 banks received from the settlement.

This Court reviews a sentencing court's orders of restitution "deferentially" under an "abuse of discretion" standard, reversing only where "a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotations omitted).

Here, the government concedes that remand is necessary in order for the District Court to clarify whether Drayer is entitled to a further reduction in the restitution ordered because of any amounts the 20 additional victim-banks received from the BONY settlement. Accordingly, we vacate the judgment with respect to Drayer's restitution order and remand solely for findings in that respect. We otherwise find no "abuse of discretion" in the District Court's restitution order and reject all of Drayer's additional challenges as meritless.

**CONCLUSION**

For the reasons stated above, the District Court's judgments of conviction for Drayer and Barker dated January 12, 2007 and May 27, 2008 respectively, are **AFFIRMED** except with respect to the sentence imposed and restitution ordered for Drayer. The sentence and restitution ordered with respect to Drayer are **VACATED** and the matter is **REMANDED** for proceedings not inconsistent with this Order.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk

10