14-1580-cr
United States v. Barbarino

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand fifteen.

PRESENT:

> RALPH K. WINTER,
> CHESTER J. STRAUB,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                              No. 14-1580-cr

LANCE BARBARINO,

> *Defendant-Appellant,*

STEVEN KIMMEL, ANTHONY GUARINO,
WILLIAM DICK, GABRIEL ALMANDI,
CIRO COZZOLINO, ISAAC DAVIS,
SALVATORE GUARINO, PETER SHARPE,
JAMIL FULLER, WILLIAM ROTHLEIN,
CHRISTOPHER SAVINO, ALEX LEMBERG,

> *Defendants.*[*]

_____

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform to the caption above.

_____

FOR DEFENDANT-APPELLANT: ROBERT W. RAY, Fox Rothschild LLP, New York, NY.

FOR APPELLEE: AMANDA KRAMER (Margaret Garnett, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 28, 2014, is **AFFIRMED**.

Defendant-Appellant Lance Barbarino stands convicted, following a jury trial, of (1) conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371; (2) securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. 240.10b-5; (3) conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 1349; and (4) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Barbarino was sentenced principally to ninety-seven months' imprisonment and ordered to pay $1 million in restitution. On appeal, Barbarino makes two primary arguments. First, he argues that he was denied a fair trial by the cumulative effect of several errors that he claims were committed by the District Court and the Government before and during his trial. Second, he contends that his sentence was unreasonable because the District Court calculated the applicable Guidelines sentencing range using a loss amount of $12 million. We assume the parties' familiarity with the underlying facts and procedural history of the case, to which we refer only as necessary to explain our decision to affirm.

Both the Supreme Court and our own Circuit have "repeatedly recognized that the cumulative effect of a trial court's errors, even if they are harmless when considered singly, may amount to a violation of due process requiring reversal of a conviction" where those errors "in the aggregate . . . deprived the defendant[] of a fair trial." *United States v. Al-*

2

*Moayad*, 545 F.3d 139, 178 (2d Cir. 2008); *see Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978). We take Barbarino's arguments in turn.

Barbarino first argues that he was inappropriately rushed to trial when the District Court denied his request for a continuance based on Barbarino's "serious health issues." J.A. 66. But trial courts have "a great deal of latitude in scheduling trials" and have "broad discretion . . . on matters of continuances," *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983), and we discern no abuse of discretion here. Barbarino's counsel never suggested that Barbarino was unfit to participate in his own defense or that Barbarino's health was in jeopardy if trial proceeded as scheduled. Based on the information presented to the court by Barbarino's attorney, no further inquiry was necessary, nor did Barbarino's counsel request a hearing on the issue.

Second, Barbarino challenges the District Court's management of a situation arising when Barbarino fell ill within a juror's sight. We are persuaded, however, that the District Court's subsequent interactions with jurors and curative instructions adequately addressed any possible prejudice. We perceive no error.

Third, Barbarino argues that the District Court abused its discretion and caused him harm in cutting short the cross-examination of Dr. Frank Moore. A district court has "wide latitude . . . to impose reasonable limits on . . . cross-examination," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), and the decision to limit the scope or length of cross-examination is reviewed for abuse of discretion, *see United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012). We need not decide whether the District Court could be said to have abused its discretion in limiting Dr. Moore's cross-examination because, in any event, "a new trial is not required if the error was harmless," *White*, 692 F.3d at 244, and Barbarino suffered no harm from the court's decision here. The Government offered to make Dr. Moore available for further cross-examination by telephone, and Barbarino has not offered any reason why this compromise would not have been adequate. Moreover, later in trial, the parties stipulated to the admissibility of a document concerning Dr. Moore's communications with Barbarino, and the Government stated that defense counsel "agreed if we stipulate to this document coming in, that he would have no further questions of Dr. Moore, that would satisfy his

3

concern about his cross not being completed." Tr. 421. Barbarino did not object to this characterization. Given that acquiescence, and the fact that Barbarino has not identified other questions he was prevented from asking on cross-examination, any error by the District Court in cutting short Dr. Moore's testimony could not be deemed to have harmed Barbarino.

Finally, Barbarino argues that the Government made improper remarks that caused him substantial prejudice. To prevail on a claim of prosecutorial misconduct, a defendant must show that the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). The bar for granting a new trial based on a prosecutor's summation is high: "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)).

Barbarino identifies two broad categories of allegedly improper remarks. First, the Government, in its opening and closing statements as well as in examining witnesses, referred consistently to Powercom/Empire as a "boiler room"—a term that Barbarino argues was prejudicial and possibly confusing to the jury. Second, Barbarino argues that the Government's repeated use of terms such as "fraudsters," "cronies," and "partners in crime," as well as its many references to "lies" or "lying," were improper.

Upon our review of the record, we cannot say that the Government's use of these terms "so infected the trial with unfairness" as to make Barbarino's conviction a denial of due process. *See Darden*, 477 U.S. at 181. The Government's repeated use of terms such as "boiler room" and "fraudsters" and references to "lies" and "lying" are troubling and should be avoided as a practice, but the references here did not rise to the level of prejudicial error. Moreover, in deciding whether improper comments warrant the grant of a new trial, this Court takes into consideration "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct" in determining whether to grant a new trial. *United States v. Spinelli*, 551 F.3d 159, 170 (2d Cir. 2008). Here,

4

the overwhelming evidence of Barbarino's guilt weighs heavily against the grant of a new trial. *See id.*

In sum, whether considered individually or cumulatively, Barbarino's claims of error cannot be said to have "deprived [him] of a fair trial." *Al-Moayad*, 545 F.3d at 178. A new trial is therefore not warranted.

Barbarino argues also that his sentence was procedurally unreasonable, because the court erroneously (he asserts) adopted a loss amount of $12 million in calculating the applicable Guidelines sentencing range. "When reviewing a sentence for reasonableness, we apply a deferential abuse-of-discretion standard." *United States v. Morrison*, 778 F.3d 396, 399 (2d Cir. 2015) (per curiam) (internal quotation marks omitted). Procedural error occurs, *inter alia*, when a district court "does not give proper consideration to the § 3553(a) factors," "does not adequately explain the sentence imposed," or "makes clearly erroneous factual findings." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009).

Under the Sentencing Guidelines, a defendant is responsible for the "reasonably foreseeable pecuniary harm" resulting from his fraud. USSG § 2B1.1 cmt. 3(A)(i). This may include the harm stemming from the reasonably foreseeable acts and omissions of his co-conspirators. *See id.* § 1B1.3(a)(1)(B). The sentencing court need only "make a reasonable estimate of the loss, given the available information." *United States v. Reifler*, 446 F.3d 65, 107 (2d Cir. 2006) (internal quotation marks omitted). A district court's factual findings on loss amount are reviewed for clear error. *See United States v. Carboni*, 204 F.3d 39, 46 (2d Cir. 2000).

At trial, the Government introduced evidence that Powercom/Empire brought in at least $12 million during the period when Barbarino worked there as a salesman. The Government also introduced significant evidence that the full $12 million loss was reasonably foreseeable to Barbarino. That evidence included photographs of the Powercom/Empire office showing that there were no walls between the co-conspirators, and the testimony of a coworker that from his desk "[i]f I was listening, I could hear anyone." J.A. 91. The Government adduced also ample evidence that Barbarino

5

understood that the sales activities of Powercom/Empire were fraudulent. On this record, the District Court did not clearly err in determining that the entire $12 million loss was foreseeable to Barbarino, and chargeable to him in its sentencing calculation.

Nor does the disparity between the loss amount used to calculate Barbarino's sentence and the loss amount attributed to Barbarino's co-conspirators render Barbarino's sentence unreasonable. The loss amount used to calculate Barbarino's Guidelines sentencing range—$12 million, as just discussed—was greater than the amount used to calculate the sentence of any of Barbarino's co-conspirators, it is true. But at trial, the Government presented evidence that Barbarino reasonably could have foreseen the entire $12 million loss caused by the conspiracy. Finally, the District Court did not err by failing to give greater consideration to the disparity in loss amounts attributed to the various co-conspirators because "a district court may—but is not required to—consider sentencing disparity among co-defendants under 18 U.S.C. § 3553(a)(6)." *Johnson*, 567 F.3d at 54.

We have considered Barbarino's remaining arguments and find them to be without merit. For the reasons set out above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6