11-425-cr(L)
United States v. Defreitas

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2012

(Argued: March 11, 2013    Decided: May 31, 2013)

Docket Nos. 11-425-cr(L), 11-429-cr(CON), 11-985-cr(CON)

----------------------------------------------------x

UNITED STATES OF AMERICA,

    Appellee,

                      -- v. --

ABDUL KADIR, ABDEL NUR, RUSSELL DEFREITAS a/k/a MOHAMMED,

    Defendants-Appellants,

KAREEM IBRAHIM a/k/a AMIR KAREEM,

    Defendant.

----------------------------------------------------x

B e f o r e :   WALKER, SACK, and WESLEY, Circuit Judges.

Defendants-Appellants Abdul Kadir and Russell Defreitas appeal from the 2011 judgments of conviction and sentences of the United States District Court for the Eastern District of New York (Irizarry, Judge).  After a jury trial, Defendants-Appellants were found guilty of conspiracy to carry out acts of terrorism against John F. Kennedy International Airport.  The district court then sentenced them to life in prison.  We hold that there was no error in the district court's trial rulings or in the sentences imposed. AFFIRMED.

MARSHALL L. MILLER (Jo Ann M. Navickas, Berit W. Berger, Zainab Ahmad on the brief), Assistant United States Attorneys, of counsel to Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, for Appellee.

DARRELL B. FIELDS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, for Defendant-Appellant Russell Defreitas.

ARZA FELDMAN, Feldman and Feldman, Uniondale, NY, for Defendant-Appellant Abdul Kadir.

DANIEL NOBEL, Law Office of Daniel Nobel, New York, NY, for Defendant-Appellant Abdel Nur.

JOHN M. WALKER, JR., Circuit Judge:

Defendants-Appellants Abdul Kadir and Russell Defreitas appeal from the 2011 judgments of conviction and sentences of the United States District Court for the Eastern District of New York (Irizarry, Judge). After a jury trial, Defendants-Appellants were found guilty of conspiracy to carry out acts of terrorism against John F. Kennedy International Airport. In these appeals, we address various evidentiary rulings made during the trial of Russell Defreitas and Abdul Kadir (collectively, "defendants") as well as the reasonableness of the district court's sentences. We also dispose of the appeal of co-defendant Abdel Nur and the motions relevant to that appeal.

2

**BACKGROUND**

We assume the parties' familiarity with the underlying facts of this case and recite only those details relevant to this appeal.

The conspiracy to blow up John F. Kennedy International Airport ("JFK Airport") began in 2005 or 2006. In 2006, Steven Francis, a confidential informant for the FBI, met with Defreitas and was later recruited into the conspiracy. Francis wore a recording device during many of his interactions with the conspirators, and the recordings of these conversations provided much of the evidence at trial. In addition to Defreitas, the operative indictment included as defendants and co-conspirators Nur, Kadir, and Kareem Ibrahim.

Francis and Defreitas conducted surveillance of JFK Airport four times in January 2007 and videotaped the bombing targets, including fuel tanks and pipelines that, according to Defreitas, would destroy "the whole of Kennedy" and part of Queens when they exploded. Defreitas App. at 831 (Recording Tr.). The government presented evidence that Nur was brought into the conspiracy at least in part to help them arrange a meeting with Yasin Abu Bakr, the leader of a militant Islamic group called Jamaat Al-Muslimeen ("JAM") located in Trinidad. The conspirators wanted Abu Bakr to connect them with Adnan Shukrijumah, an al Qaeda operative known for his bomb-making abilities.

In February 2007, Defreitas and Francis met Kadir in Guyana. Kadir expressed interest in the plot and urged Francis and Defreitas to refer to the attack using code words to avoid detection. In late May 2007, Ibrahim was brought into the conspiracy in order to present the plot to his contacts in Iran. Between February and May 2007, the conspirators met and discussed their plans by telephone and in person in Guyana and Trinidad. In one telephone conversation, Defreitas twice described the planned attack as "worse than the World Trade Center," referring to the September 11, 2001 attacks. Id. at 940, 948 (Recording Tr.).

Kadir, Defreitas, Ibrahim, and Nur were arrested in early June 2007. After being informed of his Miranda rights, Defreitas admitted to his leadership role in the plot. On the same day, Defreitas, Kadir, Nur, and Ibrahim were charged by complaint with conspiracy to attack a public transportation system, in violation of 18 U.S.C. § 2332f(a)(2), (b)(1)(E), (b)(2)(A), and (c); conspiracy to destroy a building by fire or explosive, in violation of 18 U.S.C. § 844(n); conspiracy to attack aircraft and aircraft materials, in violation of 18 U.S.C. § 32(a)(8); and conspiracy to attack a mass transportation facility, in violation of 18 U.S.C. § 1992(a)(8) and (10), (c)(1), and (c)(2). Defreitas and Kadir were also charged with surveillance of a mass transportation facility, in violation of 18 U.S.C. § 1992(a)(8), (c)(1), (c)(2), and 18 U.S.C. § 2. On June 28, 2007, a grand jury indicted the

4

defendants on the above charges, as well as a charge of conspiracy to destroy international airport facilities, in violation of 18 U.S.C. §§ 37(a), 37(b)(1), and 37(b)(2).

Prior to trial, the district court severed the case of Ibrahim from the other defendants. Just before the start of trial, Nur pleaded guilty to the lesser charge of providing material support to terrorists and thereafter was sentenced to 180 months' imprisonment.

Following a trial in July 2010, a jury convicted Defreitas on all six counts, and Kadir on all but the surveillance count. At separate sentencing proceedings, the district court sentenced each defendant to life imprisonment.

**DISCUSSION**

Defreitas and Kadir argue on appeal that the district court made various errors during trial and imposed sentences that were unreasonable. Nur has also appealed, but he has advanced no arguments. His counsel has filed a motion to withdraw pursuant to Anders v. California, 386 U.S. 738 (1967), and the government has moved to dismiss Nur's appeal.

**1. Defreitas and Kadir**

**a. Anonymous Jury**

Before trial, the government moved to empanel an anonymous jury on three grounds: (1) the serious and violent nature of the crimes charged; (2) the intensity of the international media

5

coverage of the trial; and (3) threats to the judicial system itself, including alleged threats by Defreitas against his own attorney and potential trial witnesses. Defreitas objected, arguing that an anonymous jury was inappropriate because he could not have carried out the plot and his co-conspirators were all outside the United States.

The district court granted the government's motion, finding that the evidence of threats against witnesses, the seriousness of the allegations, and the extensive media coverage of the trial all supported the government's motion.  The district court also carefully employed mechanisms designed to ensure a fair jury, including an extensive juror questionnaire, a hearing to permit the government and the defendants to strike jurors for cause, two weeks of additional questioning, and a full opportunity to exercise peremptory challenges.

If a district court has taken reasonable precautions to protect a defendant's fundamental rights, we review its decision to empanel an anonymous jury for abuse of discretion. United States v. Thai, 29 F.3d 785, 801 (2d Cir. 1994).  "[W]hen genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights."  United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012) (quotation marks omitted).  A district court may order the empaneling of an anonymous jury "upon (a) concluding that there is strong reason to believe the jury needs

protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." Id. (quotation marks omitted).

If a district court determines that an anonymous jury is appropriate, the court must take "reasonable precautions to minimize any prejudicial effects on the defendant and to ensure protection of his fundamental rights." Thai, 29 F.3d at 801. This can be done by giving the jurors "a plausible and nonprejudicial reason for not disclosing their identities" and "the court's conduct of a *voir dire* designed to uncover bias." Id. Here the district court specified in the questionnaire that the reason for the anonymous jury was that, given the media interest in the case, anonymity would protect the jurors' "rights of privacy" and assist them "in discharging [their] responsibility as jurors independently, fairly and impartially." Defreitas App. at 287-88 (Jury Instructions).

We see no basis to fault the district court's empanelment of an anonymous jury in this case. Defreitas and his co-defendants were charged with serious crimes of terrorism. Their plot to blow up oil pipelines and jet fuel tanks at JFK Airport had the potential to kill hundreds or thousands of people. The district court reasonably concluded that the jurors would be fearful if their identities were revealed to these defendants. Our view, expressed in an earlier case, that "the reasonable likelihood that

7

the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety" holds here and supports the district court's decision. United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2009). This ruling is buttressed by the extensive media coverage of the case, an additional factor we have found significant in considering the decision to empanel an anonymous jury. See United States v. Wong, 40 F.3d 1347, 1377 (2d Cir. 1994).

The district court also relied on separate reports by two jailhouse informants that Defreitas had threatened to harm potential witnesses. Defreitas disputed their accounts and argues that the district court should not have relied on their testimony without conducting an evidentiary hearing. Because "[t]he district court has discretion to determine whether or not an evidentiary hearing is needed on the government's allegations" concerning a defendant's interference with the case, United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995), and because there were sufficient independent grounds for empaneling an anonymous jury, we need not address this point. Our confidence that the use of an anonymous jury was neither an abuse of discretion nor unfairly prejudicial is strengthened by the record of appropriate measures the district court took to ensure the jury's impartiality, which was never seriously challenged.

**b. Admission of Matthew Levitt's Expert Testimony**

Before trial, the government moved in limine for the admission of terrorism expert Matthew Levitt's testimony to describe al Qaeda and Hezbollah and their activities in South America and to define various terms related to terrorism.  See United States v. Defreitas, 07-CR-543(DLI)(SMG), 2011 WL 317964, at *4 (E.D.N.Y. Jan. 31, 2011).  The government asserted that it was relevant because "[t]he fact that the defendants wanted to present their plot to organizations and operatives with a well-established history of participating in international terrorist activities demonstrates the seriousness of their intent to have their plot succeed."  Id.  As relevant on appeal, the defendants opposed Levitt's testimony on the basis that the mention of terrorist organizations would be more prejudicial than probative and thus should be excluded under Federal Rule of Evidence 403.

The district court granted the government's motion, reasoning that aside from supporting the government's allegation, the adverse effect was unclear.  Levitt testified at trial without further objection from the defendants.  Levitt's testimony was dry and academic, devoid of vivid imagery that might excite the jury.  See, e.g., Kadir App. at 192 (Levitt Direct Testimony).

A district court's decision to admit expert testimony is reviewed for abuse of discretion.  United States v. Massino, 546 F.3d 123, 132 (2d Cir. 2008) (per curiam).  Federal Rule of

9

Evidence 403 provides that the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury," among other concerns not relevant here. Provided the district court "has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." United States v. Al-Moayad, 545 F.3d 139, 159-60 (2d Cir. 2008) (quotation marks omitted). "To avoid acting arbitrarily, the district court must make a conscientious assessment of whether unfair prejudice substantially outweighs probative value." Id. at 160 (quotation marks omitted).

Admitting Levitt's testimony was not an abuse of discretion. As the district court noted, Levitt's testimony was "probative of the intent element of the charged conspiracies" because the "government's allegation is that defendants intended to obtain support from [al Qaeda and Hezbollah], and/or identified with their goals." Defreitas, 2011 WL 317964, at *8. The defendants wanted to exclude this testimony because it was detrimental to their case, but "[e]vidence is [unduly] prejudicial only when it tends to have some adverse effect upon a defendant *beyond* tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980) (emphasis added). It was not error for the district court to allow testimony

10

about these groups because it supported the government's allegations against the defendants and was not unfairly prejudicial.

**c. Kadir Photographs**

As part of its case against Kadir, the government introduced three photographs of Kadir posing with multiple machine guns. During trial, Kadir filed a motion in limine to exclude these photos, as well as photos depicting Kadir's children with guns, on the grounds that the photos were irrelevant, that he had not been charged with possession of a firearm, and that the photos constituted inadmissible character evidence. The government argued on the basis of United States v. Khalil, 214 F.3d 111 (2d Cir. 2000), that the photos were admissible to rebut the defense's portrayal of Kadir as a peaceful, religious teacher seeking only to raise funds to build a mosque.[1] Specifically, during his opening statement, Kadir's counsel described Kadir as

> a man who lives in the country of Guyana, was well-respected, 9 children, 24 grandchildren, working guy. . . . He's a Muslim Shiite. He goes to Iran. . . . And Kadir had a dream . . . to build a mosque, a Shiite mosque, in Guyana, and there's nothing wrong with that[.]

Gov't App. at 181-83 (Trial Tr.).

---

[1] In Khalil, we affirmed the district court's admission of photos of defendant Abu Mezer "wearing garb that is associated with violent militants, and assuming a posture of martyrdom . . . [as] relevant to rebut the defense portrayals of Abu Mezer as having no destructive objective and posing no real threat." 214 F.3d at 122.

After hearing argument, the district court admitted the photos of Kadir, but not the photos of his children, noting that the admitted photos were

> relevant to rebut [portrayals] by the defense in this case of Mr. Kadir as having no destructive objective and posing no real threat to the safety of human beings in general. . . . These photographs go towards rebutting that in the way that was permitted, in the court's view, in the Khalil case.

Kadir App. at 236-38 (Trial Tr.). The district court noted that Khalil was not identical in part because Kadir, unlike Mezer in Khalil, had not been charged with weapons possession. When the photographs were introduced to the jury, the district court gave a limiting instruction, noting "[t]his evidence may be considered by you only to the extent it bears upon Defendant Kadir's knowledge, intent or motive to commit the acts charged in the indictment." Id. at 248 (Trial Tr.). It is noteworthy that, as part of his defense, Kadir himself later referred to all of the photos, including those excluded earlier by the district court.

The district court's admission of the Kadir photographs is reviewed for abuse of discretion. See Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 124 (2d Cir. 2005). Kadir's argument that the photos were impermissible character evidence under Federal Rule of Evidence 404 is undermined by his gamesmanship, most notably his introduction of *all* of the photos as part of his defense.[2]

---

[2] Kadir's attorney stated that the purpose of the motion in limine

12

In determining whether the district court properly admitted the photos as evidence of motive, opportunity, or intent, we consider whether: "(1) [the evidence] was offered for a proper purpose; (2) it was relevant to a disputed trial issue; (3) its probative value is substantially outweighed by its possible prejudice; and (4) the trial court administered an appropriate limiting instruction." United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003). The photos satisfy all four requirements: they were offered (1) to show that Kadir's intent was not confined to peaceful fundraising for a future mosque; which (2) was a disputed trial issue; moreover, (3) the photos' probative value, in showing intent, was not substantially outweighed by the prejudice caused Kadir; and (4) the trial court issued an appropriate limiting instruction to the jury more than once. The district court did not abuse its discretion in admitting the photographs.

**d. Declassification of October 2006 Meeting Memo**

In October 2006, case agents met in Barbados to discuss the ongoing investigation and development of the plot. The defendants were provided with a partially declassified report of that meeting during discovery and at trial moved unsuccessfully to have the rest

---

had been "to control when the pictures were coming in," to which the district court responded that it had "never, never, never" in 31 years of practice heard that a party could argue to affect the timing of the introduction of evidence. Gov't App. at 341, 342-43 (Trial Tr.).

declassified and turned over to them.  They argue on appeal that the district court's denial of their motion was error.

At the Barbados meeting, there were at least three individuals present, including two case agents, Robert Addonizio and Michael Hanratty.  Louis Napoli, Francis's primary handler, did not attend the meeting.  The third participant, whose identity remains classified, authored the challenged report about the meeting (the "October 2006 report").  During discovery, the government declassified the parts of the report that stated that "U.S. Government officers" would reach out to Francis "and task him to increase pressure on the plotters . . . to move ahead," and that after Defreitas returned to the United States "U.S. Government officers plan[ned] to mount a full court press on Defreitas with an eye towards building a case of material support to terrorism." Defreitas App. at 344 (October 2006 Report).

Urging complete declassification of the report and its author's identity at trial, Defreitas argued that "the document at least raises the possibility and the likelihood that there is a witness out there who has direct evidence of government pressure." Id. at 413-14, 421 (Trial Tr.).  Counsel for Defreitas later argued that "because of the classified issues, Mr. Defreitas's ability to present his defense is compromised." Id. at 423 (Trial Tr.).

In denying Defreitas's motion to have the document declassified, the district court ruled that Defreitas could elicit

14

testimony on the structure of the investigation through cross-examination of the government's witnesses. Addonizio, Napoli, and Francis testified at trial, and Hanratty was available to testify but was not called by either side.

We review an evidentiary ruling such as this for abuse of discretion and "will reverse only if an erroneous ruling affected a party's substantial rights." Marcic, 397 F.3d at 124. In general, a party is entitled to a new trial if the district court committed errors that were a "clear abuse of discretion" and "clearly prejudicial" to the trial's outcome, when measured "by assessing the error in light of the record as a whole." Id. (quotation marks omitted).

The district court's decision not to declassify the remaining classified portions of the October 2006 report and the identity of its author was not an abuse of discretion. Defreitas has failed to show what the defense could gain through the report's declassification that was not otherwise available by cross-examining the government's witnesses at trial. Moreover, as the district court noted, "the fact that neither defendant [was] seeking the entrapment defense diminishe[d] the importance of the document and therefore ma[de] it less relevant." Defreitas App. at 432-33 (Trial Tr.). Any information about pressures on Francis, orders given to Francis, or the overall structure of the investigation could have been elicited through Francis himself as

15

well as through the other government investigators.  The district court's ruling was not error, much less reversible error.

### e. Exclusion of Kadir Tape Recordings

During Kadir's cross-examination of Francis, Kadir tried to introduce portions of a recording made by Francis during which a student of Kadir's makes statements such as: "we are not with al Qaeda.  We don't agree with what al Qaeda does.  We don't agree with killing innocent people."  Kadir App. at 158 (Trial Tr.).  Although Kadir makes no similar statements, the defense argued to the district court that he was "agreeing [with] and adopting all of [his student's] statements," by saying "a hum, a hum."  Id. (Trial Tr.).  Kadir argued that his own statements ("a hum, a hum") were not hearsay because they reflected his intent as expressed by his student.  The district court disagreed, ruling that Kadir's "mere statement of 'mmm mm' . . . [wa]sn't necessarily an adoption [of] what someone says," id. at 165 (Trial Tr.), and the testimony was excluded as hearsay.

As with the other evidentiary rulings discussed above, the district court's decision to exclude this tape recording is reviewed for abuse of discretion.  See Marcic, 397 F.3d at 124.  A defendant may not introduce his own prior out-of-court statements because they are "hearsay, and . . . not admissible."  United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).  However, a "statement of the declarant's then-existing state of mind (such as

16

motive, intent, or plan)" is exempted from the hearsay rule. Fed. R. Evid. 803(3). Thus, the student's statements would be admissible if Kadir could show that they reflect Kadir's own intent.

We find no fault with the district court's conclusion that Kadir did not establish his adoption of his student's statements. Kadir cites to one case that he alleges stands for the proposition that "A-hum" means "yes." See Johnson v. Ricks, 9:02-CV-1366 (NPM), 2007 WL 3171782, at *9 (N.D.N.Y. Oct. 29, 2007) (in response to a question by the court, a juror answers "A-hum," which the court apparently accepts as a "yes" answer). There was no holding to that effect, however, and the colloquy between judge and juror in Johnson shows at most that such an utterance *can* mean yes. As the government points out, an "mm-mmm" noise "is as likely to represent agreement with what somebody is saying as it is to represent not paying attention to what somebody is saying, or even disagreement with what somebody is saying coupled with a willingness to hear the person out." Gov't Br. at 95. Absent more persuasive evidence that Kadir shared his student's views, it was not error for the district court to exclude the recording.

**f. Sentencing**

Both Kadir and Defreitas challenge their sentences of life imprisonment as substantively unreasonable. Kadir also argues that

17

his sentence was procedurally unreasonable. These arguments are without merit.

Probation calculated the base offense level for all of Defreitas's convictions to be 33. A twelve-level terrorism enhancement was added pursuant to U.S.S.G. § 3A1.4(a),[3] and four additional levels were added under § 3B1.1(a) because Defreitas was a leader of the plot. With an adjusted offense level of 49, and an automatic criminal history category of VI because the crime involved terrorism, U.S.S.G. § 3A1.4(b), Defreitas's offense level exceeded by six levels the highest level on the sentencing chart, level 43, which itself carried a life sentence recommendation without any regard to a defendant's criminal history.

The base offense level for Kadir's offenses was 33, which was similarly increased by twelve levels under the terrorism enhancement and by two levels for testifying falsely at trial. With a criminal history category of VI, and an adjusted offense

---

[3] Section 3A1.4, describing adjustments for crimes involving terrorism, provides:

> (a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

> (b) In each such case, the defendant's criminal history category . . . shall be Category VI.

In short, the penalties for terrorism are harsh: at offense level 32 and criminal history category VI, the recommended sentence is 210-262 months.

level of 47, Kadir's recommended sentence also fell above the sentencing chart's range.

This Court reviews sentences for reasonableness under the deferential abuse of discretion standard. United States v. Johnson, 567 F.3d 40, 51 (2d Cir. 2009). Both the substance and the procedure of the sentencing are reviewed for reasonableness. Id. Among other things, procedural error may occur when the district court "(1) fails to calculate the Guidelines range; (2) is mistaken in the Guidelines calculation; (3) treats the Guidelines as mandatory; (4) does not give proper consideration to the § 3553(a) factors; (5) makes clearly erroneous factual findings; (6) does not adequately explain the sentence imposed; or (7) deviates from the Guidelines range without explanation." Id.

When examining substantive reasonableness, the Court takes "into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). Substantive reasonableness review asks whether the district court's sentence was "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009).

None of either defendant's sentencing arguments supports resentencing. Kadir argues that he was previously offered a plea

19

agreement, but that the offer was withdrawn. On this basis, he argues that his sentence was procedurally unreasonable because he was punished for going to trial, but he offers no evidence of such "punishment," other than the length of his sentence, which was within the Guidelines range. See United States v. Negron, 524 F.3d 358, 361 (2d Cir. 2008) (per curiam) (holding that a district court is not required to consider a rejected plea offer during sentencing). Further, it was not an abuse of discretion to sentence Kadir and Nur, who received a 180-month prison term, differently because Nur was sentenced under a plea agreement that included his undertaking to plead guilty to lesser charges and admit his knowledge of the plot.

Finally, neither Kadir nor Defreitas offers a persuasive argument that their sentences were substantively unreasonable. The district court stated explicitly at both sentencing hearings that it was mindful of the principle that each defendant's sentence "must not be greater than necessary to achieve the goals of sentencing." Defreitas App. at 1127 (Sentencing Tr.); see also Kadir App. at 413 (Sentencing Tr.). The defendants were convicted of conspiring to explode pipelines and jet-fuel tanks at JFK Airport in order to kill countless Americans and other travelers, disrupt air travel, and harm the American economy. The gravity of the crimes for which they were convicted easily justifies the life

20

sentences that were imposed.  Kadir's and Defreitas's sentences are affirmed.

* * *

We have reviewed the remainder of Defreitas's and Kadir's arguments and find them to be without merit.

**2. Nur**

Although Nur filed a notice of appeal, his counsel Daniel Nobel moves for permission to withdraw pursuant to Anders, 386 U.S. 738.  The government cross-moves to dismiss Nur's appeal as barred by an appeal waiver.

Nobel's Anders motion and the government's motion to dismiss Nur's appeal are granted.  Upon review of the plea agreement and the plea hearing transcript, we find that Nur's guilty plea was knowing and voluntary.  He also knowingly and voluntarily agreed not to appeal his conviction or sentence if the district court "impose[d] a term of imprisonment of 180 months or below."  Nur App. at 66 (Plea Agreement).  Because Nur was sentenced to 180 months' imprisonment, his waiver bars the appeal.  In any event, he raises no non-frivolous issues on appeal.  See United States v. Gomez-Perez, 215 F.3d 315, 319, 321 (2d Cir. 2000).

**CONCLUSION**

For the foregoing reasons, the district court judgments are AFFIRMED.  Nur's appeal is DISMISSED, and his attorney's Anders motion is GRANTED.

21