22-1707-cr
*United States v. Skinner*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of May, two thousand twenty-four.

PRESENT:    John M. Walker, Jr.,
            Steven J. Menashi,
            Eunice C. Lee,
                    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

   *Appellant,*

  v.                                              No. 22-1707-cr

WILLIAM SKINNER, AKA SEALED DEFENDANT 2,

   *Defendant-Appellee.*[*]

_____

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

| | |
|---|---|
| *For Appellant*: | HAGAN SCOTTEN, Assistant United States Attorney (Andrew K. Chan, Adam S. Hobson, Frank Balsamello, Won S. Shin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |
| *For Defendant-Appellee:* | NICHOLAS PINTO, Attorney at Law (George R. Goltzer, Law Office of George Robert Goltzer, *on the brief*), New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the order of the district court of June 6, 2022, is **VACATED** and **REMANDED** for further proceedings consistent with this order.

Defendant-Appellee William Skinner pleaded guilty pursuant to a plea agreement to conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 and § 841(b)(1)(C). As part of the agreement, Skinner admitted that he participated in the murder of Efren Cardenas in order to further the conspiracy. The district court imposed on Skinner a time-served sentence of 73 months, to be followed by three years of supervised release, with a special condition of 12 months of home detention and a $100 special assessment. The government appeals this sentence as substantively unreasonable.

We "review[] sentences for reasonableness under the deferential abuse of discretion standard." *United States v. Kadir*, 718 F.3d 115, 125 (2d Cir. 2013). This

review is not a "rubber stamp," *United States v. Rigas*, 583 F.3d 108, 122 (2d Cir. 2009), but it is "particularly deferential," *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). While "giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts," this court "take[s] into account the totality of the circumstances." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008). "As part of our substantive reasonableness inquiry, we also look to the District Court's own explanation at the sentencing hearing" and evaluate the substantive reasonableness of that explanation. *United States v. Park*, 758 F.3d 193, 201 (2d Cir. 2014).

We will conclude that a district court has abused its discretion only when it "(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quoting *Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016)). A sentence will meet the third prong when it is "so 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law' that allowing [it] to stand would 'damage the administration of justice.'" *Broxmeyer*, 699 F.3d at 289 (quoting *Rigas*, 583 F.3d at 123).

In reviewing a non-Guidelines sentence, we "take the degree of variance into account and consider the extent of a deviation from the Guidelines," but we do not use a "rigid mathematical formula." *Cavera*, 550 F.3d at 190 (quoting *Gall v. United States*, 552 U.S. 38, 47 (2007)). "We do not presume that a non-Guidelines sentence is unreasonable, nor do we require extraordinary circumstances to justify a deviation from the Guidelines range." *United States v. Stewart*, 590 F.3d 93, 135 (2d Cir. 2009) (internal quotation marks omitted). "[V]ariations from the Guidelines 'may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply.'" *Id.* at 135-36 (quoting *Kimbrough v. United States*, 552 U.S. 85, 89 (2007)).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

**I**

Although the Guidelines sentence was 240 months of imprisonment, the district court imposed a substantially lower sentence after "consider[ing] all of the [sentencing] factors set forth in Section 3553(a) of Title 18, including, as most relevant to Mr. Skinner's situation, the nature and circumstances of the offense and his history and characteristics." App'x 149. The district court acknowledged that "[i]n the federal system, there is no more serious crime than intentional murder." *Id.* at 150. Accordingly, the district court stated that "if … my only job is to punish based on the act, then yes, 20 years is appropriate." *Id.* at 153. However, the district court imposed a lower sentence because it took "into account what Mr. Skinner has done over the last three decades, and he has basically done everything that we would want him to do." *Id.* The district court explained that, in contrast to other defendants with a similar background, "Skinner went on to do something which is unique in my experience, in that he completely … turned his life around. He worked, he raised a family, and he created a community of people around him who respected him, admired him, and he did that for 30-plus years." *Id.* at 153-54. The district court viewed Skinner's rehabilitation—coupled with the lack of any need for specific deterrence—as a justification for a substantially below-Guidelines sentence.

We do not "substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case," *Cavera*, 550 F.3d at 189, and "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge," *Broxmeyer*, 699 F.3d at 289 (internal quotation marks omitted). Accordingly, we conclude that it was not necessarily an abuse of discretion for the district court to determine that Skinner's rehabilitation justified a substantial deviation from the Guidelines.

4

## II

Nonetheless, the government argues that the district court misapprehended the seriousness of Skinner's crime, rendering the sentence substantively unreasonable. *See* Appellant's Br. 20-26. Because "the District Court's own explanation" of the sentence is part of the substantive reasonableness inquiry, *Park*, 758 F.3d at 201, if the district court predicated the sentence on a misapprehension of the seriousness of the crime, the sentence would be substantively unreasonable. The record, however, is ambiguous on this point.

In explaining its sentence, the district court discussed two prior intentional murder cases that had come before it. Those cases, according to the district court, "were different in their own ways, but did provide some important context for me." App'x 150. The district court described a previous murder arising out of a battle for narcotics territory between two rival gangs, which it described as "not unlike the situation here," *id.* at 151, and another murder arising from a gang rivalry, in which—for the participants—"it was like playing cowboys and Indians, there was no respect, no appreciation for the sanctity of human life, but that's what they knew," *id.* at 152. The district court explained that "Skinner was involved in that same culture," and "that's who Mr. Skinner was at the time, that's what he was doing at the time." *Id.*

The government objects to the district court's suggestion that Skinner's crime was comparable to the earlier murders involving gang rivalries, in which the victims could easily have been perpetrators and vice versa. *See* Appellant's Br. 24. As the government notes, "the Cardenas murder targeted a non-violent and non-threatening drug dealer whom Skinner's co-conspirators lured to the scene for the purpose of ambushing him[, and] [t]here was no evidence or argument whatsoever that Efren Cardenas had any past, present, or future intention of harming Skinner or" his fellow gang members. *Id.* According to the government, Skinner's crime was *worse* than these others, and he should have received a higher sentence than the defendants in those cases. When the district court sentenced

5

Skinner's co-defendants, the district court acknowledged that Cardenas was not violent and "that Cardenas was 'assassinated in cold blood in the street for drugs.'" *Id.* at 25 (quoting App'x 196-97). The government argues that the district court failed to appreciate this context when sentencing Skinner, given that it imposed a higher sentence on Skinner's co-defendants based on an accurate understanding of the circumstances surrounding the crime.

If the district court based its sentence on an understanding that Skinner's crime was part of a back-and-forth retaliatory cycle of gang violence, it was substantively unreasonable because that characterization does not match the record. It is not clear, however, that the district court relied on such an understanding. The government's interpretation is plausible. But there is another plausible interpretation. The district court's discussion of the culture of violence reflected in the other murders immediately preceded its discussion of how "Skinner was involved in that same culture," and "that's who Mr. Skinner was at the time," but that Skinner has since done "something which is unique in my experience, in that he completely, by all accounts, turned his life around." App'x 152-53. In other words, the district court's discussion of the culture of gang violence might not have been intended as a description of the severity of Skinner's crime but as an illustration of the degree of Skinner's rehabilitation. If that were the district court's intention, the sentence would not be substantively unreasonable. Because the district court acknowledged the seriousness of murder, stated that 20 years would be an appropriate sentence based on the crime alone, and expressed a detailed understanding of the crime's seriousness with respect to the co-defendants, this second interpretation is as plausible as the government's.

### III

Given the ambiguity in the record regarding how the district court decided on the sentence imposed, a remand is appropriate for the district court to clarify its understanding of the circumstances regarding the severity of the crime. We therefore vacate and remand for further proceedings. Although we remand for

clarification as to the basis of the sentence, on remand the district court may reconsider any of the parties' arguments with regard to sentencing. *Cf. United States v. Lespier*, No. 22-1372, 2024 WL 208117, at *3 (2d Cir. Jan. 19, 2024) ("Although we remand for clarification as to the basis for the denial of compassionate release, on remand the district court may consider [the defendant-appellant's] arguments and determine that it would instead grant the motion for compassionate release.").

\* \* \*

We have considered the parties' remaining arguments, which we conclude are without merit. For the foregoing reasons, we vacate and remand the case to the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7