23-6378(Con), 23-6401(Con)
*United States v. Blanco*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of November, two thousand twenty-five.

PRESENT:
> AMALYA L. KEARSE,
> DENNIS JACOBS,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

    v.

ANTHONY ZOTTOLA, SR., HIMEN ROSS, AKA ACE, AKA A BOGGIE,

        *Defendants-Appellants,*\*

Nos. 23-6378(Con), 23-6401 (Con)

---

\* The Clerk of Court is respectfully directed to amend the case caption as indicated above.

BUSHAWN SHELTON, AKA SHELZ, ARTHUR CODNER, AKA FEDDI, AKA FEDDIE, AKA FETTY, AKA FEDDI BOSSGOD, AKA FETTY BOSS, AKA SCARY, KALIK MCFARLANE, AKA DOTTKOM, AKA DOT, ALFRED LOPEZ, AKA ALOE, BRANDEN PETERSON, AKA B, AKA MUR B, JULIAN SNIPE, AKA BIZ, AKA BIZZIE B, AKA BIZZZY, JASON CUMMINGS, AKA THE HAT, AKA STACKS,

*Defendants.*

_____

| | |
|---|---|
| FOR DEFENDANT-APPELLANT ZOTTOLA: | THEODORE S. GREEN, Green & Willstatter, White Plains, NY. |
| FOR DEFENDANT-APPELLANT ROSS: | LAWRENCE D. GERZOG, The Fast Law Firm, New York, NY. |
| FOR APPELLEE: | EMILY J. DEAN, Assistant United States Attorney (Amy Busa, Kayla C. Bensing, Devon E. Lash, Andrew M. Roddin, Assistant United States Attorneys, *on the brief*), *for* John J. Durham, United States Attorney for the Eastern District of New York, NY. |

Appeals from judgments of the United States District Court for the Eastern District of New York (Hector Gonzalez, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Anthony Zottola, Sr. ("Zottola") and Himen Ross ("Ross")

were convicted upon a jury verdict of murder-for-hire conspiracy and murder-for-hire, in violation of 18 U.S.C. § 1958(a), unlawful use and possession of firearms, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and causing death through use of a firearm, in violation of 18 U.S.C. § 924(j)(1). Each was sentenced principally to concurrent terms of life imprisonment. Zottola and Ross now challenge their judgments of conviction in this consolidated appeal.[1]

## BACKGROUND

The evidence at trial detailed that, over the course of a year, Zottola hired hitmen, including Ross, to murder his father, Sylvester Zottola ("Sylvester"), and older brother, Salvatore Zottola ("Salvatore"), in order to take control of the family's real estate business. Beginning in 2017, Zottola, Ross, and their co-conspirators commenced a series of attacks on Sylvester and Salvatore, culminating in the July 11, 2018 near-fatal shooting of Salvatore and the October 4, 2018 murder of Sylvester. The evidence demonstrated that Ross, who shot both victims, was paid by Zottola through a fellow co-conspirator, Bushawn Shelton ("Shelton").

---

[1] Defendant Herman Blanco pleaded guilty pursuant to a plea agreement and subsequently sought to appeal his conviction and sentence. Blanco's appellate counsel has moved for permission to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the government has moved to dismiss Blanco's appeal as barred by the appellate waiver contained in the plea agreement. By separate order issued today, we have resolved these motions. *See United States v. Blanco*, No. 22-3211 (2d Cir. Nov. 10, 2025).

On appeal, Zottola challenges certain evidentiary rulings, the use of an anonymous and partially sequestered jury, and the court's jury instructions regarding the testimony of cooperating witnesses. Ross joins Zottola's arguments and further challenges the admission of certain references to gang affiliation. We assume the parties' familiarity with the remaining facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision.

## DISCUSSION

### I. EVIDENTIARY CHALLENGES

"We review a trial court's evidentiary rulings for an abuse of discretion and recognize that district courts enjoy broad discretion over the admission of evidence." *United States v. McDermott*, 245 F.3d 133, 140 (2d Cir. 2001) (citation omitted). A district court abuses its discretion if "its ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if its decision cannot be located within the range of permissible decisions." *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013).

#### A. Sylvester's Proffer Statements

Zottola first argues that the district court abused its discretion by excluding a proffer statement Sylvester made to the FBI, which Zottola sought to admit as a statement against penal interest pursuant to Federal Rule of Evidence 804(b)(3). Sylvester made proffer statements to the FBI on July 12 and July 16, 2018, shortly after the failed attempt

4

on Salvatore's life. The court admitted Sylvester's July 12 statement, but excluded the July 16 statement as cumulative and outside the hearsay exception for statements against penal interest. In both statements, Sylvester acknowledged that he operated an illicit gambling business and described a conflict with Albanian organized crime figures. The excluded July 16 statement, however, contained the additional information that Sylvester had stopped making protection payments to his mafia protector, Richard DeLuca, due to DeLuca's inability to protect his interests.

"Federal Rule of Evidence 804(b)(3) permits the admission of a statement against an unavailable declarant's penal interest if the statement, when made, had so great a tendency to expose the declarant to criminal liability that a reasonable person in his position would have made the statement only if he believed it to be true, and corroborating evidence clearly indicates the trustworthiness of the statement." *United States v. Dupree*, 870 F.3d 62, 80 (2d Cir. 2017).

The district court acted within its discretion in excluding Sylvester's July 16 proffer statement as it was not self-inculpatory. Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Williamson v. United States*, 512 U.S. 594, 600–01 (1994). Here, the precluded statement refers to Sylvester's ceasing protection payments to the mafia. As the district court correctly noted, "if you're paying protection money, you're a victim

5

and not a perpetrator of a crime." Joint App'x at 350. As to the remaining portion of the July 16 statement, the district court properly excluded it as cumulative of the evidence already in the record.

Even assuming, *arguendo*, that the court improperly excluded the July 16 statement, any error was harmless. Because the district court admitted the July 12 statement, the defense was free to present its alternative perpetrator theory, including by presenting evidence that Sylvester had a conflict with the Albanian mafia and that his mafia connections had refused to help. The only new information contained in the July 16 statement was that Sylvester had stopped paying DeLuca protection money. This additional statement, however, was not probative of motive because Salvatore and Sylvester were attacked multiple times prior to when protection payments stopped, undermining Zottola's theory that the July and October shootings were retribution by the mafia. Accordingly, any possible error in excluding the July 16 statement was harmless.

B. Testimony of Defense Witness-1

The trial court also acted well within its discretion to exclude Defense Witness-1's ("DW-1") unreliable and uncorroborated testimony, which Zottola likewise sought to admit pursuant to Rule 804(b)(3). DW-1 was purportedly incarcerated with Zottola's co-defendant, Jason Cummings. Cummings allegedly told DW-1 that another co-defendant, Shelton, reported to Cummings that Sylvester's murder was motivated by a mafia plot to

6

take control of Sylvester's construction companies. Cummings also purportedly said that Salvatore was shot with a ".38 caliber pistol because this weapon does not leave shell casings." Joint App'x at 176-A.

"To evaluate whether a statement is sufficiently trustworthy [under Rule 804(b)(3)], we look to evidence that corroborates both the declarant's trustworthiness and the truth of the statement." *United States v. Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999). Here, DW-1's statements materially contradicted the trial evidence. For example, the NYPD recovered shell casings from the scene of Salvatore's shooting, and video surveillance confirmed that the assailant used a semi-automatic firearm, which leaves shell casings. Moreover, the identity of the declarant who supposedly told Shelton that Sylvester's murder was ordered by the mafia—the key testimony for Zottola's defense— was unknown, and thus impossible to corroborate. Accordingly, we affirm the trial court's exclusion of this unreliable and uncorroborated hearsay.

### C. Salvatore's Prior Consistent Statements

The trial court did not abuse its discretion in admitting portions of several recorded calls between Salvatore and an incarcerated mafia figure, Vincent Basciano, pursuant to Federal Rule of Evidence 801(d)(1)(B). Rule 801(d)(1)(B) permits the admission of a declarant-witness's prior consistent statement if the statement is offered "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted

7

from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B); *see United States v. Flores*, 945 F.3d 687, 705–06 (2d Cir. 2019) (explaining that Rule 801(d)(1)(B)(ii) allows for the substantive use of prior consistent statements to rebut "defendants' attacks on [the declarant]'s credibility and memory").

During Salvatore's cross examination, defense counsel accused Salvatore of lying to law enforcement and suggested that he knew or suspected that the mafia was involved in the attacks against his family. The admitted portions of the calls between Salvatore and Basciano describe Salvatore's frequent visits to the police to assist with their investigation and demonstrate that Basciano and Salvatore did not know who was behind the attacks. These statements were thus "consistent with [Salvatore's] testimony" and were offered "to rehabilitate [Salvatore's] credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B).

### D. Third-Party Text Messages

The district court properly excluded certain text messages between Zottola's co-conspirator, Shelton, and unrelated third parties pertaining to an alleged conspiracy to sell marijuana. Zottola sought to admit the Shelton-third-party texts under the rule of completeness, arguing that the texts provided necessary context to previously admitted contemporaneous texts between Zottola and Shelton. However, Rule 106 does not

8

"require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009) (internal quotation marks omitted). Here, the proffered texts do not explain or relate to the communications between Shelton and Zottola. Rather, they are texts to different people, on different topics, and do not use the same coded language as the Shelton-Zottola texts. As the proffered texts bear no relevance to the communications between Shelton and Zottola, the district court properly exercised its discretion in excluding them.

### E. Zottola's Post-Arrest Statements to Law Enforcement

Pursuant to Rule 403, the district court did not abuse its discretion by admitting Zottola's spontaneous post-arrest statements to law enforcement. After his arrest, while sitting in an FBI office for booking and processing, Zottola said to an agent, "I'm sorry about my kids . . . one thing I can say is, I had a feeling you were coming. When I don't know, but I can thank you that it was after Father's Day and it was after all my kids' birthdays. Whatever it is." Zottola claims that these statements were not made from a guilty conscience, but referred to his expectation that he was the target of a grand jury investigation. We are unpersuaded and find that these statements were probative of Zottola's consciousness of guilt and were not substantially outweighed by the risk of unfair prejudice because Zottola remained free to argue that the jury should draw other, non-incriminating inferences from the statements. *Cf. McDermott*, 245 F.3d at 140

9

("[W]hen reviewing a Rule 403 ruling, we must review the evidence maximizing its probative value and minimizing its prejudicial effect." (internal quotation marks omitted)). Therefore, we find no abuse of discretion in admitting these statements.

### F.      Evidence of Co-Conspirators' Gang Membership

The district court did not err by admitting testimony that Ross and other co-conspirators were members of the same gang. Evidence of a defendant's gang affiliations may be admissible "to provide background for the events alleged in the indictment, or to enable the jury to understand the complete story of the crimes charged, or how the illegal relationship between coconspirators developed." *United States v. Reifler*, 446 F.3d 65, 91–92 (2d Cir. 2006) (internal quotation marks and citations omitted). Here, the gang-affiliation testimony helped establish how the co-conspirators knew each other, how they grew to trust each other, and clarified how and why they communicated in specific ways. The gang-affiliation evidence was thus properly admitted under Rule 401 as direct evidence of the charged conspiracy. Moreover, the testimony was properly admitted under Rule 403 because the court took care to mitigate the risk of unfair prejudice by precluding any reference to the "Bloods," the specific gang at issue. Accordingly, we find that the court did not abuse its discretion in admitting the gang-affiliation testimony.[2]

---

[2] To the extent challenged here, we affirm the district court's denial of Ross's motion for mistrial and severance based on the gang-related testimony. Ross has failed to demonstrate unfair prejudice, let alone "prejudice so severe that his conviction

## G.     Harmless Error

Although we find that the district court acted within its evidentiary discretion in rendering the above rulings, we likewise affirm because any potential error was harmless. *See United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001) ("[I]n order for an error to be deemed harmless, the reviewing court must conclude beyond a reasonable doubt that a rational jury would have rendered a verdict of guilty absent the alleged error.").  "The strength of the government's case against the defendant is probably the most critical factor in determining whether an error affected the verdict." *United States v. Colombo*, 909 F.2d 711, 714 (2d Cir. 1990).

Here, the government presented ample evidence demonstrating that Ross and Zottola committed the charged crimes.  The government introduced thousands of text messages between the co-conspirators, including between Zottola, Shelton, and Ross. These messages detailed every step of the murder-for-hire conspiracy, including the planning of the various attacks, promises of payment, confirmations of the shootings of Salvatore and Sylvester, and celebratory messages immediately after Sylvester's murder. This evidence was corroborated by cell-site data demonstrating Zottola's repeated

___

constituted a miscarriage of justice." *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir. 1999) (internal quotation marks omitted).  Absent such a showing, "we are not apt to reverse, since, by and large, joinder promotes judicial efficiency." *Id.* at 103 (internal quotation marks omitted).

11

meetings with his co-conspirators, evidence of payments from Zottola to his co-conspirators, cooperating witness testimony, video surveillance, and DNA evidence. In light of this overwhelming evidence, we conclude that any issues with the challenged evidentiary rulings were "unimportant in relation to everything else the jury considered on the issue[s] in question, as revealed in the record." *United States v. Atilla*, 966 F.3d 118, 131 (2d Cir. 2020) (internal quotation marks omitted).

## II.     THE JURY CHALLENGES

### A.     Anonymous and Partially Sequestered Jury

Zottola and Ross next challenge the district court's empanelment of a partially sequestered anonymous jury, arguing that these protective measures impaired their presumption of innocence and deprived them of a fair trial. We find no abuse of discretion.

"A district court may order the empaneling of an anonymous jury upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted). "If there is evidence to support the district court's finding of reason to believe the jury needs protection, and if the court has taken reasonable precautions to minimize any prejudicial effects on the defendant . . . , the

12

decision to empanel an anonymous jury is reviewed only for abuse of discretion." *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994). Likewise, the "decision to sequester the jury to avoid exposure to publicity is committed to the discretion of the court." *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989).

Given the violent nature of the charged crimes, the affiliations with organized crime, the defendants' willingness to interfere with the judicial process both before and during the proceedings, and significant media attention, the district court acted well within its discretion to partially sequester and anonymize the jury. Further, the court minimized any potential prejudice by conducting a *voir dire* designed to uncover bias, and by giving the jurors a plausible and nonprejudicial reason for the protective measures. We accordingly affirm the district court's empanelment of an anonymous and partially sequestered jury.

**B.      Jury Instruction on Evaluating Cooperator Testimony**

Finally, we find no error in the district court's jury instruction regarding cooperator testimony. "We review preserved challenges to jury instructions *de novo*, but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Jimenez*, 96 F.4th 317, 322 (2d Cir. 2024) (internal quotation marks omitted). "A defendant challenging a jury instruction as erroneous must show both error and

13

ensuing prejudice . . . ."  *United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) (internal quotation marks omitted).

Here, the court's charge properly instructed the jury on evaluating cooperator testimony.  The court informed the jury of a cooperator's motive to lie and instructed the jury to "scrutinize such testimony with caution and weigh it with great care."  Joint App'x at 441; *see United States v. Vaughn*, 430 F.3d 518, 524 (2d Cir. 2005) ("As long as district courts intelligibly identify a cooperating witness's possible motivations for the jury's consideration, the cautionary charge given to the jury regarding a cooperating witness's testimony is sufficient.").  The court also properly instructed the jury regarding U.S.S.G. § 5K1.1, informing the jury that the government cannot be compelled to make a 5K1 motion "unless it acts in bad faith in refusing to make such a motion," and noting that the "court has complete discretion . . . to impose any sentence that it deems appropriate and reasonable."  Joint App'x 441-42.  This instruction accurately describes the law and did not mislead the jury as to the correct legal standard.  *See United States v. Doe*, 741 F.3d 359, 362 (2d Cir. 2013) (providing that the government must act "fairly and in good faith" in refusing to make a § 5K1.1 motion (internal quotation marks omitted)); *United States v. Fernandez*, 127 F.3d 277, 286 (2d Cir. 1997) ("[E]ven where the government moves for a departure pursuant to § 5K1.1, the sentencing judge retains discretion to decide whether

or not to grant such a departure.").  Accordingly, we find no error in the jury instruction given.

We have considered the parties' remaining arguments and conclude they are without merit.  Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court